Rebecca Delaplaine and George L. Deved, trading as the Baltimore Smelting Company v. Ammonia Company of Philadelphia, Appellant.

*Contract—Construction of written correspondence—Province of court and jury.*

Where the correspondence between the parties defines a contract and shows repeated efforts on the part of the vendors to comply with its terms and repeated excuses on the part of the vendees for nonperformance on their part, the trial judge did not fail in his duty, as to construction of the written correspondence, in instructing the jury, that, from the letters of the vendees, it appeared that they had refused to comply with their contract; but as there was also oral evidence on the question it was properly left to the jury to say whether under all the evidence the vendees had actually refused to receive a balance of scrap undelivered but contracted for by them.

*Evidence—Damages—Vendor and vendee—Sale of property refused by vendees.*

When the evidence showed conclusively a refusal by defendants to take a balance of scrap, as they agreed to do, evidence is properly admissible on the part of the plaintiffs to show that they proceeded with due diligence and care to sell the same and that the full current market price was actually realized from the sale.

Argued Oct. 7, 1896. Appeal, No. 53, Nov. T., 1896, by defendant, from judgment of C. P. No. 3, Phila. Co., March T., 1895, No. 291, on verdict for plaintiffs. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on contract to deliver scrap tin.

Plaintiffs commenced their action to recover damages for an alleged breach of contract, the facts averred in their statement being substantially as follows: On January 31, 1894, the Baltimore Smelting Company communicated by letter to the Ammonia Company of Philadelphia their price per ton for one thousand tons of tin scrap to be supplied from Baltimore, the entire tonnage deliverable in the year 1894. To this letter, on February 1, 1894, the Ammonia Company replied in effect that the conditions of the proposal of the Baltimore Smelting Company were satisfactory. The shipment of the tin scrap began soon after the contract was entered into and payment of the same regularly remitted. On December 24, all the tin scrap except one hundred and sixty-eight tons had been delivered to and paid for by the Ammonia Company. During the course of the year various communications were received from the Ammonia Company to the effect that they (the Ammonia Company) were overstocked with tin scrap and desired further shipments withheld until notice to the contrary. In reply to a letter making proffer of the balance of one hundred and sixty-eight tons, the Ammonia Company wrote, inter alia: " *We would greatly regret it if you expected us to take the balance of the 1,000 tons named, when in negotiation with your Mr. Delaplaine.* Under the circumstances existing last year we think we have fully complied with the spirit of the contract, in receiving from you 832 tons." To this the following reply in part was made: " *We answer by saying that we do not waive our right to place the balance of the thousand tons of tin scrap with*

*you, which is due on the contract.*" No reply to this last letter, as above, was received by the Baltimore Smelting Company and, thereupon, on the 7th or 8th of January, 1895, a resale was made of the tin scrap to George L. Deved, a partner in the Baltimore Smelting Company, for $3.00 per gross ton, being $2.68 per short ton (the contract with the Ammonia Company calling for $3.60 per short ton), there being further evidence allowed by the court and submitted to the jury that the market price in January, 1895, was $2.50 per short ton. On February 4, 1895, the attorney for the Baltimore Smelting Company notified the Ammonia Company of his determination to sue provided the claim of $504.50 was not paid. In reply the Ammonia Company made offer of settlement at a lower figure. This was declined and suit begun by the Baltimore Smelting Company. It was further averred that a representative of the plaintiff below called upon the defendant company prior to January 1, 1895, and met with a positive refusal to take the balance deliverable under the contract. The damages claimed were the loss on a resale, expenses incurred in loading, etc.

The answer of the defendant denied all the material allegations contained in the statement, except in so far as the same were admitted or confessed. It was averred that the defendants, knowing that the plaintiffs had withheld delivery of the balance at their (defendants') request, and assuming that the plaintiffs had the right in law to continue the contract beyond the 1st of January, 1895, and to make a tender after that period, offered either to pay the sum of $250, or accept the balance of the tin scrap upon tender of the same. This was refused by the plaintiff company and suit begun. It was further contended that the alleged resale was but a pretense, one partner in the Baltimore Smelting Company selling to the other, and further. without notice of the same to the defendant.

Defendant's points and answers thereto.

1. That under the terms of the contract between plaintiffs and defendants in this case it was the duty of the plaintiffs, as a condition precedent to their right to recover, to ship from Baltimore to the defendants the tin scrap in question before January 1, 1895, and as they failed to do this they cannot recover. *Answer:* This is affirmed unless the defendants refused ·

to take the goods; in that event delivery by the plaintiffs was not necessary.

2. That the evidence does not show that the plaintiffs were relieved from this duty. *Answer:* Refused.

3. If the learned judge should consider defendants' letter of December 26, 1894, as notice of an intended breach of the contract, then he is respectfully requested to charge that notice of an intended breach of contract will operate as a breach only if accepted and acted upon by the other party, who may, if he pleases, disregard the notice and insist upon performance according to the contract, and if he does so insist he cannot afterwards rely upon such notice as a breach. In such case he keeps the contract alive and remains subject to all his own obligations and liabilities under it. *Answer:* Refused, because it is for the jury to determine the evidence touching the refusal of the defendants to take the goods.

4. If the parties to a contract continue to negotiate after the time fixed for the completion of the contract it will operate as a waiver. *Answer:* Refused.

5. If the jury believe from the evidence that the plaintiffs and defendants, by mutual consent or by their actions, waived the time for the performance of the contract, then the time became indefinite, and if afterwards the plaintiffs desired to enforce performance it was their duty to ship the tin scrap from Baltimore according to the contract before they could call upon the defendants to perform their part of the contract. *Answer:* Refused, because there is no evidence of the mutual consent of the parties.

6. The offer of the defendants to accept, as contained in their letter to plaintiffs' counsel of February 8, 1895, having been rejected by letter of February 12, 1895, from plaintiffs' counsel to defendants, such refusal and this action constitute a breach of the contract by the plaintiffs, and they are not entitled to recover in this action. *Answer:* Refused.

7. That if the plaintiffs claim that their measure of damage is the difference between the contract price and the amount received upon a resale, they must show that such sale was fair and made in reasonable time. *Answer:* Affirmed.

8. Under all the evidence in this case your verdict must be for the defendants. *Answer:* Refused.

### CHARGE OF THE COURT.

The plaintiffs in this case claim to recover from the defendants damages arising from a breach of contract for the purchase and sale of a certain article called scrap tin. The correspondence or letters between the parties have been read to you, and they constitute the contract between the plaintiff and defendant. It is my duty to instruct you as to the nature of the contract. It calls for the purchase of one thousand tons of scrap tin at a certain price. It also requires the plaintiff to deliver to the defendants the scrap tin in Philadelphia.

They cannot recover for all or any portion of this scrap unless they deliver the goods in Philadelphia—unless the defendants themselves relieved the plaintiff from the duty of delivering the scrap in Philadelphia. The plaintiffs contend that they were so relieved by the defendants, and it is the duty of the plaintiffs to establish, to the satisfaction of the jury, that the defendants did relieve the plaintiffs from the duty of delivering it at Philadelphia. [It is contended that that relief is found in the letters of the defendants to the plaintiffs, in which it clearly appears, as contended by the plaintiffs, that the defendants refused to take the balance of the scrap tin undelivered—one hundred and sixty-eight tons. That is entirely a question for the jury, and all I have a right to say to you upon the subject is that if the defendants refused to take the scrap and notified the plaintiffs of the refusal, then the plaintiffs were not bound to deliver it,] [11] and they would be entitled to recover for the one hundred and sixty-eight tons. So that, you see, to you is submitted the question as to whether the plaintiffs can recover or not. They cannot recover unless, as I have already said, the defendants relieved them of the necessity and duty of delivering it; the plaintiffs can recover if the jury are satisfied from the evidence that the defendants refused to take the goods.

If you come to that, then the question of damages arises. They are entitled to recover for any depreciation in value at and about the time they refused to take the goods. In a case of this kind the plaintiffs were bound to use reasonable and proper diligence in the sale of the goods. They had no right to keep them an indefinite or very long time, until the fall of the market might have reduced the value of the article to its

560 BALTO. SMELTING CO. *v.* AMMONIA CO., Appellant.

Charge of Court—Assignments of Error.    [2 Super. Ct.

lowest possible price.  They must show you that in making the sale it was made in a reasonable time after the refusal, and that they used fair and proper means to obtain a full and fair price for the goods.  There is no testimony upon this point except that of the plaintiffs themselves, and it is for you to determine how far they endeavored to obtain a fair and full price in the sale of these goods.  If they did use proper means and used proper time to sell the goods, then they are entitled to recover, and in addition they would be entitled to recover the necessary damages or expenses which were consequent upon the breach of contract and the sale of the goods.  That is a matter which you will determine from the evidence.

[I do not know that there is any evidence in this case that the plaintiff did not sell the goods in a reasonable and proper time, or that they sold them in any manner which was calculated to depress their value.] [12]  If it be contended in argument that they did not do all that was necessary, there should be some evidence to show that they did not sell the goods at a proper time, or that they did not use ordinary and proper means to obtain a fair and full price for the goods.  I have nothing further to say except that upon all the questions I have submitted to you it is your duty to carefully consider all the evidence and carefully consider the arguments of counsel in relation to that evidence, because the arguments of counsel should always be with the endeavor to assist the jury in arriving at a proper conclusion in every case; in other words, they should always assist the jury in arriving at a fair and just verdict.

Verdict for plaintiff $520.44.    Defendants appealed.

*Errors assigned* were, (1–9) answers to defendants' points, reciting same:

(10) In admitting the evidence regarding the price on resale of the goods in the absence of proof of notice to defendants of such resale, the evidence thereon being in substance as follows:

James H. Delaplaine, sworn:

(Questioned by plaintiffs' counsel.)

"Q. After the defendant declined to take the tin scrap what became of it?   A. We had to store it in our yards and take care of it.   Q. What became of it?   A. We sold it to Mr. Deved,

who started in business for himself, and he bought it. Q. Do you know the price at which he bought it? (Objected to.) A. Mr. Diehl, I propose to show that at the time in question the defendants were notified that they would be held liable for a breach of the contract, and after the breach of contract the price had fallen and it was sold for what they could get, and we claim for the difference in price. (Testimony admitted. Exception for defendant.) Q. What was the price at which Mr. Deved bought the one hundred and sixty-eight tons? A. For $3.00 per ton. . . . Q. Do you know the date of the sale to Mr. Deved? A. No, sir; but it was immediately after January 1st. Q. Did you say anything to Mr. Thayer about disposing of this tin scrap? A. No, sir."

In cross-examination, in answer to question by defendants' counsel:

" Q. The firm is composed of Mrs. Delaplaine and Mr. Deved? A. Yes, sir. A. You have said that this tin scrap was sold by Mrs. Delaplaine and Mr. Deved, trading as the Baltimore Smelting Company, to Mr. Deved? A. It was sold by me to Mr. Deved, as Mrs. Delaplaine's representative, as he commenced a new firm and a new business. He bought the scrap. . . . Q. Mr. Deved and Mrs. Delaplaine owned it in December and Mr. Deved owned it in January? A. We sold it to Mr. Deved after the Ammonia Company refused to take it, and we had nothing to do but sell it to Mr. Deved, because he was our only customer. Q. Did you write to the Ammonia Company that you were about to make that sale? A. I did not personally. Q. Did anybody for you? A. I do not know whether Mr. Deved notified them or not, but I hardly think he did. We had various correspondence about it, and they positively refused to take it and we had to dispose of it."

(11, 12) To portions of the general charge, reciting same.

*John B. Thayer*, for appellant.—It is the duty of the court to construe a writing in evidence and not to submit it to the jury for construction: Folsom v. Cook, 115 Pa. 548.

This rule applies not to the contract alone, but to all written evidence between the parties relative to its performance : Foster v. Berg, 104 Pa. 324 ; Kraber v. Insurance Co., 129 Pa. 9; Morrell v. Frith, 3 Meeson & Welsby, 402. The defendants'

third point submitted was in the express language of the Supreme Court in Zuck v. McClure, 98 Pa. 545. To the same effect see Benj. on Sales, p. 550; Smoot's Case, 15 Wall. 48.

If the refusal was not a renunciation of the contract and the plaintiffs were not justified in so considering it, then it would be necessary for the plaintiffs to hold themselves in readiness to perform, and a further offer of performance was necessary : Haines v. Tucker, 50 N. H. 307.

If he elects to treat the contract as in full force he must do what the law requires him to do to entitle him to damages: Crist v. Armour, 34 Barb. 378. Treating contract as still subsisting, vendor is .subject to all his own obligations and liabilities : Platt v. Brand, 26 Mich. 172. If by mutual consent the time for the performance be waived it becomes indefinite, but mutual and dependent whenever it should occur: Irvin v. Bleakley, 67 Pa. 24.

If damages are sought to be fixed by the price received on a resale, then it must be shown that the sale was fair, in reasonable time, and with notice of vendor's intention to sell : Benj. on Sales, sec. 788, note *e*; 2 Kent's Com., sec. 504; Haines v. Tucker, 50 N. H. 307; Pollen v. Le Roy, 30 N. Y. page 556.

The sale was unfair (being between the plaintiffs), was without notice, and was not made at the place of delivery, but in Baltimore.

A resale at private sale without reasonable notice or efforts to secure the best price, does not fix the legal measure of damages : Sedgwick on Damages, sec. 755; Case v. Simonds, 7 N. Y. Supp. 253; Andrews v. Hoover, 8 Watts, 239, was a public sale, and in Girard v. Taggart, 5 S. & R. 32, in Tompkins v. Haas, 2 Pa. 74, there was express notice. In Guillon v. Earnshaw, 169 Pa. 463, defendants instructed plaintiffs to resell.

There was not a particle of evidence of the market price at the place of delivery.

*Thomas Diehl,* for appellee.—It is hardly necessary to cite authorities in support of the proposition that notice by one party to the contract that he refuses to perform excuses the tender of performance by the other. See, however, Groves v. Donaldson, 15 Pa. 135; Hocking v. Hamilton, 158 Pa. 107.

Notice of intention to resell was not necessary: Girard v. Taggart, 5 S. & R. 33. To the same effect is McCombs v. McKennan, 2 W. & S. 219. See also Gaskell v. Morris, 7 W. & S. 32; Fire Works Co. v. Polites, 130 Pa. 536.

OPINION BY WILLARD, J., November 9, 1896:

In this case we are confronted with twelve assignments of error in a matter wherein the appellees sued for a breach of contract for the delivery of one thousand tons of tin scrap to be delivered from time to time by them to the appellants in the year 1894.

The correspondence between the parties defines the contract and shows repeated efforts of the appellees to comply with its terms on their part, and repeated excuses on the part of the appellants for nonperformance on their part. It is assigned for error that the judge failed to construe the written correspondence between the parties, but in language that could not be misunderstood he instructed the jury that from the letters from the appellants it appeared that they . . . . refused to take tin scrap undelivered. In this instruction, in our opinion, he was clearly right. As there was also oral evidence on the question he left it for the jury to say whether under all the evidence the appellants refused to receive the balance of tin scrap undelivered.

The learned judge directed the jury in his general charge that the appellees were bound to deliver the scrap during the year 1894 unless prevented from so doing by the appellants. In this connection the answers to the first, second and third points put by the defendants below were correct.

The appellants having refused to take the goods by their letter of December 26, the answer thereto by the appellees under date of December 29, in which they say " we do not waive our right to place the balance of the one thousand tons of tin scrap with you which is due on the contract," in connection with the conduct of the appellants on its receipt, was no waiver of their right to recover. The appellants did not continue to negotiate but were silent for one month and ten days, and only when confronted with a suit for breach of the contract did they again offer to negotiate, and the learned judge properly answered the defendants' fourth, fifth and sixth points. There is no merit

in the exception to the answers to the defendants' seventh and eighth points. Had the judge affirmed them it would have been manifest error.

The evidence showed conclusively that on the refusal of the appellants to take the balance of the one hundred and sixty-eight tons of scrap as they had agreed to do, the appellees proceeded with due diligence and care to sell the same and actually realized from the sale the full current market price. The evidence to prove this was properly admitted.

When the judge charged the jury " I do not know that there is any evidence in this case that the plaintiff did not sell the goods in a reasonable and proper time or that they sold them in a manner which was calculated to depress their value," he committed no error and would have been warranted in saying that the evidence was uncontradicted on the subject. Finding no error in the charge of the court, the answer to points or the admission of testimony, the assignments of error are overruled and the judgment affirmed.